IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TGAS ADVISORS, LLC,<br>      Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>ZENSIGHTS, LLC,<br>      Defendant/Counterclaim Plaintiff,<br><br>v.<br><br>GARY WARNER and ALICE VON LOESECKE,<br>      Third-Party Defendants. | CIVIL ACTION<br><br>NO. 16-1870 |

**MEMORANDUM RE: ZENSIGHT'S MOTION FOR PRELIMINARY INJUNCTION**

**Baylson, J.**                                                                                                          **August 1, 2016**

      This is a commercial dispute involving allegations that Plaintiff TGaS misused confidential information of Defendant Zensights in developing TGaS's vendor-assessment tool, which is a digital platform designed to assist pharmaceutical companies in making choices about their vendors. Plaintiff TGaS filed a declaratory action in the Court of Common Pleas of Montgomery County, seeking a declaration that TGaS had not used Zensight's confidential information in the development of TGaS's tool, among other related things. Defendant Zensights removed the case to this Court and added multiple counterclaims and the Third-Party Defendants Gary Warner and Alice Von Loesecke.

      In this Court, Zensights filed a Motion for Temporary Restraining Order and a Preliminary Injunction based on its counterclaims. Zensights' counterclaims include claims that TGaS, Mr. Warner, and Ms. Von Loesecke breached their non-disclosure agreements with Zensights, misappropriated Zensights' trade secrets, breached their duty of good faith and fair

dealing, engaged in unfair competition, made negligent misrepresentations, and tortiously interfered with Zensights' contracts, business relationships, and prospective relationships. Additionally, Zensights claims that TGaS will be unjustly enriched if it is permitted to market its product that is allegedly based on the Zensights product.

Following an initial hearing, this Court issued a Temporary Restraining Order against TGaS, though it was substantially narrower than the Order requested by Zensights.[1] ECF 10. Today, the Court addresses Zensights' Motion for Preliminary Injunction against TGaS, Mr. Warner, and Ms. Von Loesecke.

For the reasons that follow, Zensights' Motion is DENIED and the Temporary Restraining Order is lifted.

## I. Findings of Fact

This Court held an evidentiary hearing on this motion May 9 and 12, 2016. Following the close of testimony, the Court announced findings on the record, which can be summarized as follows:

1. TGaS and Zensights are competing consulting businesses, both aimed at supporting pharmaceutical companies with various aspects of their work.

2. TGaS was considering a vendor-analysis tool several years before it held meetings with Zensights, though it was not actively pursuing product development.

3. Following discussions between members of Zensights and TGaS, TGaS accelerated its efforts to develop a vendor-analysis product. TGaS had more

---

[1] In a footnote, Zensights argues that TGaS has violated the Temporary Restraining Order. The Court will not consider such a significant argument that is raised solely via footnote.

abundant resources than Zensights and was able to quickly "advance the ball" in the development of its tool.

4. Zensights failed to produce evidence revealing that TGaS had relied on anything proprietary to Zensights in developing the TGaS tool.

5. Zensights had entered into non-disclosure agreements with TGaS, Mr. Warner, and Ms. Von Loesecke, and that at least TGaS had breached that agreement as to certain limited facts. However, those breaches did not involve information that was proprietary to Zensights.

6. TGaS's breach was material, but it was not a major breach and did not cause substantive damage to Zensights.

ECF 44 at 280-288.

The Court concluded that, although it was hard to say from the evidentiary hearing specifically whether the Zensights' counterclaims, on which it based its Motion for Preliminary Injunction, were meritorious, there were significant issues as to whether Zensights had shown irreparable harm. After receipt of post-hearing briefs, this Court's reactions from the hearing remain largely unchanged.

The Court is mindful that the parties participated in only limited, expedited discovery, and that further discovery may reveal additional information relevant to Zensights' counterclaims.[2] The above findings are limited only to the current record before the Court, and they are subject to change as this lawsuit evolves.

---

[2] In fact, since the hearing, both sides have submitted affidavits. These affidavits were unburdened by any indication of how or when the parties expected the Court to consider them, and they were submitted despite this Court's prior admonition that the parties should cease correspondence to the Court on anything other than scheduling. ECF 20. The Court declines to consider these affidavits at this time. These individuals were not subject to cross-examination on

## II.     Analysis

To establish entitlement to a preliminary injunction, a party must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). This Court is mindful that "[p]reliminary injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'" *Id.* (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)). As the movant, Zensights bears the burden of proof. *Id.*

### A.     Likelihood of Success on the Merits

Zensights is not required to show a substantial likelihood of success on the merits of all of its claims, but it must show that at least one of its claims would succeed. *See Miller v. Mitchell*, 598 F.3d 139, 148 (3d Cir. 2010) (upholding a preliminary injunction based on a finding of likelihood of success on the merits on two of three claims). Zensights has established a substantial likelihood of success on the merits, at least as to its claim that the TGaS non-disclosure agreement was breached. Zensights presented evidence that TGaS's division head for its vendor-analysis tool obtained an email that included the "Zensights Confidential Supplier Insight Summary," despite being excluded from access to such a document by the terms of the non-disclosure agreement.

Evidence that TGaS actually used Zensights' proprietary information would be relevant, if not critical, to all of Zensights' remaining counterclaims. Although the Court will not analyze

---

these issues at the two-day preliminary injunction hearing. Reliance on these affidavits at this time would be improper.

4

the remaining claims in depth, the Court notes that, at this stage, Zensights has failed to establish a likelihood that the TGaS product is actually derivative of the Zensights product. This is because Zensights' evidence fails to create a nexus between Zensights' proprietary information and the TGaS product. As the Court explained at the hearing, Zensights has failed to demonstrate that TGaS shared or used Zensights' proprietary information for the purpose of developing the TGaS tool. ECF 44 at 283-84. On the other hand, TGaS submitted evidence tending to indicate that it was inspired by Zensights to undertake its own, independent development of a product that would compete with Zensights' product, and that TGaS did in fact undertake its own, independent development of such a product.

The Court drew this evidentiary shortcoming to the attention of Zensights' counsel at the hearing, and it encouraged counsel to point to specific pieces of evidence to show that TGaS relied on confidential information in developing its vendor-analysis tool. The Court finds Zensights' supplemental briefing unpersuasive in this regard. Once again, Zensights points to the "Zensights Confidential Supplier Insight Summary" as the only piece of confidential information that was circulated among those at TGaS responsible for designing TGaS's vendor-analysis tool. As the Court explained in the hearing, it is unlikely that a fact-finder would conclude that the information contained in this document is propriety, although it was covered by the non-disclosure agreement. ECF 44 at 283-84.

Additionally, Zensights points to the similarities between the Zensights product and the TGaS product. But based on TGaS's evidence that the similarities were attributable to often-used analytical tools and industry jargon, the Court is unwilling to rely on these similarities alone to conclude that TGaS relied on Zensights' propriety information in designing TGaS's vendor

analysis tool. Neither is the Court willing to rely on TGaS's mere possession of confidential information to conclude that TGaS used such information unlawfully.

### B. Irreparable Harm

"The irreparable harm requirement is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot adequately be compensated after the fact by monetary damages." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484-85 (3d. Cir. 2000). At the hearing, the Court expressed concern about Zensights' ability to prove irreparable harm. The Court agrees with Zensights that TGaS, Mr. Warner, and Ms. Von Loesecke were in possession of at least some trade secrets and confidential information. However, the Court is unpersuaded at this time that this information was relied on by TGaS in the development of its vendor analysis tool. Thus, the Court is unpersuaded by all of Zensights' irreparable harm arguments that stem from Zensights' allegations that the TGaS product is derivative of the Zensights' product.

The Court appreciates that business injuries of the type that Zensights alleges here are sometimes considered to be irreparable injuries. *See, e.g.*, *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998) ("Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill . . . [and] the possibility of confusion."). And at least one district court in the Third Circuit has considered the breach of a non-disclosure agreement as satisfactory grounds upon which to base a finding of irreparable harm when coupled with facts indicating that the offender misappropriated the confidential information for its own use to create a competing product. *Home Life Furniture Indus., Inc. v. Banner Retail Mktg., LLC*, 630 F. Supp. 2d 527, 543 (E.D. Pa. 2009).

The Court need not address the characteristics that distinguish this case from those cases in this Circuit that have found irreparable injury, however, because even if this Court were to

conclude that Zensights experienced irreparable injury, the Court's decision would remain the same based on the remaining factors. Suffice it to say that, even upon review of the cases cited by Zensights, the Court remains of the opinion that Zensights' evidence does not justify a conclusion that there is a significant risk that Zensights will experience harms that would be incapable of remedy through monetary relief.

### C. Balance of the Equities

In balancing the equities, "a court should 'balance the harm that will occur to the moving party from the denial of the preliminary injunction with the harm that the non-moving party will incur if the injunction is granted.'" *Power Survey, LLC v. Premier Utility Servs., LLC*, 61 F. Supp. 3d 477, 487 (D.N.J. 2014). Damage to a business's reputation and credibility may be considered. *Cf. B.P. Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 263 (3d Cir. 2000) (considering damage to the movant's reputation and credibility in the context of irreparable injury).

Based on the evidence presented at the hearing, the Court found that TGaS did breach the non-disclosure agreement, but that Zensights had not shown that the extent of its injury warrants a preliminary injunction. Zensights failed to show that it has, to date, experienced injuries resulting from a TGaS product that is derivative of its own product. The Court also believes that damages may be sufficient to compensate Zensights for any injury, assuming it proves this breach at a trial.

On the other hand, the requested injunction would harm TGaS by limiting TGaS's ability to market and use its own vendor-analysis product and also by sending a message to the public that TGaS cannot be trusted with sensitive information. As explained by TGaS in its brief, and supported by evidence at the hearing, TGaS's business model is centered on benchmarking,

which requires the gathering and aggregation of confidential information. Although Zensights highlights that TGaS derives only a small percentage of its revenue from its vendor-analysis tool, a preliminary injunction could jeopardize not just the vendor analysis tool, but other important aspects of TGaS's business as well.

Thus, it appears at this time that a preliminary injunction would inflict a substantial harm on TGaS. On the other hand, the denial of the preliminary injunction would be unlikely to cause Zensights long-term harm, because the claims that Zensights has supported with evidence can be adequately remedied with monetary damages.

### D. Public Interest

"[C]ourts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24. This Court would hesitate to enter a preliminary injunction based on the current facts because it must consider the public interest, which of course favors competition. The type of business in which both parties are engaged depends on technology, but a vendor-analysis tool does not depend on any unique technology or any patented technology or any recognizable trade secrets of Zensights. There is a concrete danger that a preliminary injunction in this case could stifle legitimate competition to the detriment of the public interest. This threat counsels against issuing an injunction.

### III. Conclusion

Considering the above-discussed factors together, and based on the current record, the Court DENIES Zensights' Motion for a Preliminary Injunction and lifts the current Temporary Restraining Order.

Earlier in this litigation, substantial concerns were raised about whether this Court had subject matter jurisdiction. Ultimately, the Court determined that TGaS's reference to copyright

claims in their original request for declaratory relief was sufficient to trigger federal question jurisdiction. However, the Court's concerns about subject-matter jurisdiction have been renewed in light of the fact that neither party mentioned any copyrights or copyright-related issues at any point throughout the two-day evidentiary hearing. Counsel shall advise their current position on subject matter jurisdiction within fourteen (14) days.

An appropriate Order follows.

O:\CIVIL 16\16-1870 TGAS Advisors v Zensights\16cv1870 Memorandum 07212016.docx